No. _____

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ABEL CÁNTARO CASTILLO, ON BEHALF OF HIMSELF AND THOSE
SIMILARLY SITUATED,

Plaintiff-Petitioner,

v.

WESTERN RANGE ASSOCIATION,

Defendant-Respondent.

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEVADA

### PLAINTIFF'S PETITION FOR LEAVE TO APPEAL
### PURSUANT TO FED. R. CIV. P. 23(F)

Mark R. Thierman
mark@thiermanbuck.com
Joshua D. Buck
josh@thiermanbuck.com
Leah L. Jones
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500

Christine E. Webber
cwebber@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600

Alexander Hood
alex@towardsjustice.org
TOWARDS JUSTICE
Box 371680, PMB 44465
Denver, CO 80237-5680
(720) 239-2606

*Attorneys for Plaintiff-Petitioner*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. iii

NOTICE OF RELATED CASE ............................................................. 1

SUMMARY OF ARGUMENT ............................................................. 1

QUESTIONS PRESENTED ................................................................. 2

STATEMENT OF THE CASE AND FACTS ....................................... 3

    A.    Procedural History ............................................................. 3

    B.    H-2A and WRA Operations ............................................. 4

    C.    Sheepherders Contracts, Job Duties, and Hours Are Consistent ......... 6

RELIEF SOUGHT ............................................................................... 7

ARGUMENT ...................................................................................... 7

I.    The District Court Applied an Improper Standard to Assess Commonality ................................................................. 7

    A.    The District Court Never Considered Multiple Common Questions Plaintiff Identified ........................................... 7

        1.    WRA's Joint Employer Status Presents a Common Question of Law for the Entire Class, Not Considered by District Court .................................. 9

        2.    Whether WRA Must Pay Nevada Minimum Wage if Higher than the AEWR Presents a Common Question of Law for the Entire Class, Not Addressed by District Court .......................................................... 11

        3.    Whether WRA Shepherds Were "Engaged to Wait" Presents a Common Question for the Entire Class, Not Addressed by District Court ...................................... 12

        4.    Differences in Damages Do Not Defeat Predominance, Let Alone Commonality ............................................. 16

i

      B.     The District Court Did Not Apply the Correct Legal Standard on Typicality ...........................................................................18

II.     The Denial of Class Certification Is a Death-Knell for the Claims of Putative Class Members ................................................................19

CONCLUSION .......................................................................................22

CERTIFICATE OF COMPLIANCE .........................................................23

CERTIFICATE OF SERVICE ..............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

<small>**CASES**</small>

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................. 20

*Andersen v. Briad Rest. Grp., LLC*,
   333 F.R.D. 194 (D. Nev. 2019) ........................................... 17

*Anderson v. Mt. Clemens Pottery Co*,
   328 U.S. 680 (1946) ........................................................ 15, 16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ............................................. 19

*Cántaro Castillo v. Western Range Ass'n*,
   777 Fed.App'x 866 (9th Cir. June 19, 2019) ................... 1, 3

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ..................................... *passim*

*Doe Dancer I v. La Fuente, Inc.*,
   481 P.3d 860 (Nev. 2021) ................................................. 13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................. 18

*Huntsman v. Sw. Airlines Co.*,
   No. 19-CV-00083, 2021 WL 391300 (N.D. Cal. Feb. 3, 2021) ......... 10

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ........................................... 17

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ............................................. 17

*Little v. Solis*,
   297 F.R.D. 474 (D. Nev. 2014) ........................................... 5

*Llacua v. W. Range Ass'n*,
   930 F.3d 1161 (10th Cir. 2019) ........................................... 5

iii

*McLaughlin v. Ho Fat Seto*,
850 F.2d 586 (9th Cir. 1988) ...................................................................15

*Menocal v. GEO Grp., Inc.*,
882 F.3d 905 (10th Cir. 2018) .................................................................20

*Millan v. Cascade Water Servs., Inc.*,
310 F.R.D. 593 (E.D. Cal. 2015) .............................................................19

*In re Nassau Cnty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ....................................................................10

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ...............................................................8, 16

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) .....................................................................8

*Ruiz v. Fernandez*,
949 F.Supp.2d 1055 (E.D. Wash. 2013) ....................................................5

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ...................................................................15

*Terry v. Sapphire Gentlemen's Club*,
336 P.3d 951 (Nev. 2014) ........................................................................13

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).............................................................................15, 16

*Tyus v. Wendy's of Las Vegas, Inc.*,
407 F.Supp.3d 1088 (D. Nev. 2019).....................................................18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................8

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) .....................................................................8

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) .............................................................................10

*Weingartner v. Union Oil Co. of Cal.*,
   431 F.2d 26 (9th Cir. 1970) ...............................................................................20

**REGULATIONS**

20 C.F.R. § 655.120 ..............................................................................................4

20 C.F.R. § 655.122 ..............................................................................................4

20 C.F.R. § 655.135 ..............................................................................................4

20 C.F.R. § 655.210 ..............................................................................................4

**OTHER AUTHORITIES**

1 Newberg & Rubenstein on Class Actions § 3:21 (6th ed.) ...................................8

Briana Beltran, *134,368 Unnamed Workers: Client-Centered Representation
   on Behalf of H-2a Agricultural Guestworkers*, 42 N.Y.U. Rev. L. & Soc.
   Change 529 (2019).............................................................................................20

Federica Dell'Orto, Judith L. Wood, *Agricultural Migrant Workers in
   Today's America: A Parallel to Modern Slavery,* Fed. Law., Sept./Oct.
   2020......................................................................................................................21

Manual of Complex Litigation § 11.493 (4th ed. 2004).........................................15

Nevada Constitution's Minimum Wage Amendment,
   Nev. Const. art. 15, § 16 .....................................................................................5

v

## NOTICE OF RELATED CASE

Pursuant to Ninth Circuit Rule 28-2.6 and General Order 3.6(d), Plaintiff-Petitioner respectfully advises the Court that this request for permission to appeal is related to Appeal No. 18-15398, decided in *Cántaro Castillo v. Western Range Ass'n*, 777 Fed.App'x 866 (9th Cir. June 19, 2019).

## SUMMARY OF ARGUMENT

Plaintiff, who worked as an H-2A herder, brought this action against his employer, Western Range Association ("WRA" or "Defendant") for violations of its contractual promise, under H-2A regulations, to pay him the applicable minimum wage when higher than the Adverse Effects Wage Rate ("AEWR") set by the Department of Labor, and for parallel violations of Nevada minimum wage law. Plaintiff's motion for class certification of wage and hour/contract claims addressed in depth at least three common issues, and how those issues predominated over potential individual damages questions, along with satisfying all other Rule 23 requirements. Those common questions include: (a) whether WRA is the joint employer of the putative class; (b) whether the contract created by H-2A regulations requires paying all putative class members Nevada minimum wage when higher than the AEWR; (c) whether, under Nevada minimum wage law, putative class members were "engaged to wait" and thus working during their time on-call, as they were required to remain on their employer's premises (remote

1

areas used for grazing) near the sheep they were responsible for guarding; and (d) whether, if putative class members were *not* "engaged to wait" there was nonetheless common evidence from which hours worked could be determined. *See* Plaintiff's Brief in Support of Class Certification ("ECF 265"), at 26-27, 29-36. The district court, in an opinion spanning just two-and-a-half pages, did not discuss *any* of the common issues Plaintiff had briefed, and denied class certification having discussed only commonality and typicality.

The district court applied the wrong legal standard to those two factors, ignoring the Supreme Court's direction to engage in rigorous analysis, and that one common issue can satisfy commonality, as well as the Ninth Circuit's holdings that factual difference do not defeat common legal questions, and that individual damages issues do not defeat typicality. These are manifest errors meriting Rule 23(f) review.

Moreover, putative class members have returned to their home countries in Latin America, or are herding sheep in isolated areas. Either way they lack reasonable access to attorneys who could pursue their claims; thus, the denial of class certification will sound the death-knell for their claims.

## QUESTIONS PRESENTED

Whether this Court should grant Plaintiff permission to appeal, where:

1. The district court committed manifest legal error when it denied class certification on the grounds of commonality and typicality without

evaluating any of the common questions identified by Plaintiff in his motion for class certification, including whether Defendant is joint employer of the proposed class members; whether Defendant must pay Nevada minimum wage when higher than the AEWR; and whether Plaintiff and putative class members were "engaged to wait," and thus entitled under Nevada law to compensation for hours when they were required to remain on the range with herds of sheep, even if not engaged in more active herding duties.

2.  The district court committed manifest legal error when it denied class certification on the grounds of commonality and typicality due to the district court's finding that hours worked would differ among class members, when this Court has held that individual differences regarding damages do not defeat certification.

3.  The putative class members are all non-immigrant H-2A visa workers, most of whom have returned home to Latin America, the remainder of whom are working as sheepherders, out on the range with herds of sheep in remote locations, most of whom have limited understanding of English or the U.S. legal system, and even fewer resources to obtain counsel to represent them, such that the decision to deny class certification effectively serves as a death-knell to this litigation.

## STATEMENT OF THE CASE AND FACTS

A.    <u>Procedural History</u>

Plaintiff's First and Second Amended Complaints were initially dismissed on jurisdictional challenges. ECF 107, 140. This Court reversed and remanded. *Cántaro Castillo v. Western Range Ass'n*, 777 Fed.App'x 866 (9th Cir. June 19, 2019). The parties then completed discovery, and briefed class certification and summary judgment. In one order, the district court (a) granted Plaintiff's partial motion for summary judgment, holding Defendant was joint employer of Plaintiff;

3

(b) deferred ruling on Defendant's motion for summary judgment, while certifying a question to the Nevada Supreme Court; and (c) in the final 2.5 pages denied class certification on the ground that different herders would report different hours of work.  Order, ECF 318 (Sept. 26, 2022) ("Order"), attached hereto.

B.    H-2A and WRA Operations

Plaintiff Abel Cántaro Castillo is one of over 479 herders hired by WRA who worked in Nevada on H-2A visas after May 3, 2010.  ECF 265 at 1-2.  The H-2A program permits persons from outside the United States to work here in agriculture temporarily.  *Id.*  Department of Labor ("DOL") regulations establish minimum compensation and working conditions that employers must offer.[1]  20 C.F.R. §§ 655.120(a)(2), 655.122, 655.135, and 655.210.  These regulations specify that H-2A employers must agree to pay their workers the highest of: (a) the adverse effects wage rate (AEWR)—the DOL-determined minimum wage for the type of work and location; (b) the federal minimum wage; (c) the relevant state minimum wage; or (d) an agreed-upon collectively bargained wage.  *Id.* § 655.120. In light of the number of hours a shepherd works every month, the hourly minimum wage required by Nevada law ($8.25 per hour) is higher than the monthly applicable AEWR, which has been as low as $800 per month.  Thus, the

---

[1] In the absence of a contract containing all the required terms, H-2A documents required by the DOL are deemed to form the required employment contract.  20 C.F.R. § 655.122(q).

H-2A regulations require that the Nevada minimum wage be paid. Nevada Constitution's Minimum Wage Amendment, Nev. Const. art. 15, § 16 does not include any exemption for agricultural workers or those working "on the range" as herders do.

Because of the H-2A regulations, all herders who worked for WRA have employment contracts with the same terms. ECF 265 at 10-11. Plaintiff's claim is for violation of that contract, specifically the promise to pay the higher of the AEWR or Nevada minimum wage, and for violations of the Nevada Constitution and statutes for that same failure to pay minimum wage.

WRA is a membership association that recruits and employs foreign shepherds to work at individual member ranches. ECF 265 at 3. As the district court found in granting Plaintiff's motion for summary judgment, and WRA has repeatedly represented to the government and under oath in litigation, WRA is the joint employer of the herders. *Id.* at 3-4; *see also Ruiz v. Fernandez*, 949 F.Supp.2d 1055 (E.D. Wash. 2013) (finding that WRA was a joint employer of shepherds); *Little v. Solis*, 297 F.R.D. 474, 481 (D. Nev. 2014) (same); *Llacua v. W. Range Ass'n*, 930 F.3d 1161, n.21 (10th Cir. 2019) (characterizing WRA as a joint employer of herders). This makes sense given WRA's control over its member ranches' relationship with their H-2A herders, requiring compliance with regulations, provision of additional benefits dictated by WRA, and agreement to

5

specific terms of employment. ECF 265 at 5-7. WRA also retains sole power to terminate a herder or move the herder to a different member ranch, and guarantees payment of herders' wages if the member ranches fail to pay them. *Id.* at 5-8.

C.     Sheepherders Contracts, Job Duties, and Hours Are Consistent

All relevant H-2A documents prepared and signed by WRA state that herders will be on-call for up to 24 hours/day, 7 days/week. ECF 265 at 8-9, 11. Neither WRA nor its member ranches tracked hours worked, under special provisions applicable *only* to herders required to be on-call 24/7. *Id.* at 11 & nn.43-44. All herders work under the same job description which includes requirements to attend sheep on the range, rounding up strays, and guarding the flock from predatory animals or eating poisonous plants. *Id.* at 12-15. An expert report submitted by WRA to the California Industrial Wage Commission stated that a herder's day typically included moving the sheep to pasture in the morning, observing them during the day to ensure there were no problems, bedding them down at night, and being alert during the night for indications of predators. *Id.* at 14. When out on the range, as they are for all or most of the year, herders are on duty every day, on the lookout for, and available to address, any issues that arise throughout the day, even if they are not required to be actively laboring every moment of the day. *Id.* at 16-18. Herders are isolated in remote areas, without access to stores, restaurants, or any other entertainment. *Id.* at 18-19. They live in

6

trailers with bed, propane cooking burners, and often, though not always, propane powered refrigerators, but with no toilet or bathing facilities. *Id.* at 19-20. Herders are expected to be available to attend to the sheep at any time, so even if they do not have active duties, they cannot simply take off for town or other more enjoyable venues. Given their remote locations, the herders have no place to go. Thus, even when not actively engaged with the sheep, or engaged in other chores to maintain the camp, herders are not free to pursue their own activities. *Id.* at 20-21.

**RELIEF SOUGHT**

The Court should grant the petition and allow interlocutory review.

**ARGUMENT**

This Circuit recognizes that interlocutory appeals of class certification decisions under Rule 23(f) are appropriate in at least three circumstances, when a decision is: manifestly erroneous; presents an unsettled, fundamental question of law; or will be a death-knell for the litigation. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Ultimately, this Court retains discretion to grant any request under Rule 23(f). *Id*.

## I.  THE DISTRICT COURT APPLIED AN IMPROPER STANDARD TO ASSESS COMMONALITY

### A.  The District Court Never Considered Multiple Common Questions Plaintiff Identified

The district court disregarded well-established law governing class

7

certification, including failing to consider the many common questions argued by Plaintiff. "For purposes of Rule 23(a)(2) [commonality] [e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Moreover, factual differences within a class will not bar a finding of commonality if common questions of law exist. *Parra v. Bashas', Inc.*, 536 F.3d 975, 979 (9th Cir. 2008) ("Plaintiffs here establish commonality even though their individual factual situations differ because they all seek a common legal remedy for a common wrong."); 1 Newberg & Rubenstein on Class Actions § 3:21 (6th ed.). Plaintiff identified at least three significant questions that were common to the class, yet the district court never addressed them. *See infra* at I.A.1-3.

Ignoring Plaintiff's common questions and this controlling caselaw is manifest error; it is significant and "easily ascertainable from the petition itself." *Chamberlan*, 402 F.3d at 959. The district court's failure to follow correct legal standards presents the sort of error "most likely to warrant interlocutory review" because legal errors[2] can be reviewed without the need of a "well developed factual record." *Id.*

---

[2] The district court's legal conclusions are reviewed de novo. *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 629 (9th Cir. 2020). Moreover, "a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 816 (9th Cir. 2019) (citation omitted).

Courts are required to "rigorously analyze the facts of a class action to ensure it meets the requirements for certification" and failure to do so—as here— may constitute a manifest error. *Id.* While *Chamberlan* noted that the Supreme Court recognized that "a rigorous analysis does not always result in a lengthy explanation or in-depth review of the record," the soundness of that analysis must be readily apparent, no matter how succinct that decision may be. *Id.* (citation omitted).

Here, the district court failed to address many elements of Rule 23, including numerous questions Plaintiff identified as the basis of commonality, and failed to provide any reason for *not* addressing them. The resulting two-and-a-half page discussion of class certification is not "succinct," as this Court found acceptable in *Chamberlan*, but rather "too cursory," as is "readily apparent" from reviewing the ruling. *Id.* at 961. Moreover, to the extent that the district court did discuss commonality and typicality, it failed to apply well-established precedent.

      1.    <u>WRA's Joint Employer Status Presents a Common Question of Law for the Entire Class, Not Considered by District Court</u>

The district court's discussion of commonality omitted any consideration of one central common question: whether WRA is a joint employer of the putative class members. The district court's failure to consider whether this presents a common question is particularly glaring because it resolved this question for Plaintiff in granting partial summary judgment, finding that WRA is Plaintiff's

9

joint employer. *Compare* Order at 6-7 (holding WRA is Plaintiff's joint employer, citing multiple other cases holding WRA is joint employer of H-2A herders) *with* Order at 15-16 (making no reference to this issue when considering whether commonality is satisfied). There were no facts unique to Plaintiff considered in reaching the conclusion that WRA is his joint employer; the question is common to the class because WRA exercised the same authority over terms of employment for every class member. ECF 265 at 5-8; *supra* at 5-6.

That this question was resolved on summary judgment did not warrant ignoring it when addressing certification. Resolved issues count as common questions. *Huntsman v. Sw. Airlines Co.*, No. 19-CV-00083, 2021 WL 391300, at *4 (N.D. Cal. Feb. 3, 2021); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000). To do otherwise undermines judicial efficiency "by requiring plaintiffs who share a commonality … to pursue separate and potentially numerous actions because, ironically, liability is so clear." *In re Nassau Cnty.*, 461 F.3d at 228 (quotation marks and citation omitted).

The district court manifestly erred, disregarding caselaw requiring rigorous analysis when it ignored this common question, and similarly erred in not following settled authority that commonality can be satisfied with one common question, which was plainly presented here.

2.   Whether WRA Must Pay Nevada Minimum Wage if Higher than the AEWR Presents a Common Question of Law for the Entire Class, Not Addressed by District Court

Another common question ignored by the district court is central to the merits of this action: are H-2A employers of herders obliged to pay anything other than the DOL-approved AEWR?  Specifically, Plaintiff contends employers are required to pay Nevada's state minimum wage on an hourly basis, while WRA contended it need only pay the monthly AEWR.  *Compare* ECF 265 at 31 with ECF 66 at 9-11, ECF 270 at 11-12.  The answer to this common question resolves the meaning of uniform contract terms, and determines if the class has any claim for violation of their contracts, given that Plaintiff does not contend class members were paid less than the AEWR.

Notably, while this question was not the subject of summary judgment, it was addressed by the district court when deciding WRA's motions to dismiss, where the district court held that WRA is required to pay the higher of Nevada minimum wage or the AEWR.  *See* ECF 107 at 11-12 (finding that "as a matter of law, Plaintiffs' H-2A shepherd contracts included a promise to pay the applicable state minimum wage, if higher than the applicable AEWR").

As all class members were employed under the same contractual terms, the interpretation of this term must be the same for all class members, presenting a common question, with a common answer.  The district court did not acknowledge

11

this common issue in addressing commonality. As noted above at 10, the fact that the district court answered this legal question previously does not remove it from consideration in assessing commonality. By ignoring Rule 23's standards and refusing to acknowledge the common question of contract interpretation which satisfies those standards, the district court committed manifest error.

      3.      <u>Whether WRA Shepherds Were "Engaged to Wait" Presents a Common Question for the Entire Class, Not Addressed by District Court</u>

The district court ignored a third common question presented in support of class certification—whether the putative class members were "engaged to wait" and thus entitled to compensation for all hours out on the range—even though, in the same Order, the district court found that question so central to WRA's summary judgment motion that it certified a question to the Nevada Supreme Court regarding the correct standard under Nevada law as to when such time is compensable. *Compare* Order at 9-14 (examining the engaged to wait issue and certifying it to the Nevada Supreme Court) *with* Order at 15-16 (finding no commonality without considering the common issue presented on "engaged to wait"). As with the first two common questions, the district court's refusal to consider this common question at all is manifest error.

This common question incorporates three subsidiary common questions: (a) what legal standard Nevada law applies to determine whether workers are

"engaged to wait" (and due compensation for such time) or "waiting to be engaged" (and due no compensation because they could use the time for their own purposes); (b) how those legal standards apply to the facts in this case; and (c) if the class members were *not* "engaged to wait" and entitled to be paid for their on-call time, how should their hours of active work be assessed.

Plaintiff contended that Nevada would follow federal FLSA standards in resolving this issue, *see* ECF 265 at 30 n.72,[3] and set forth their analysis based upon such standards. ECF 265 at 31-34. The district court, while ignoring this issue when discussing commonality, did address the governing standard in considering Defendant's motion for summary judgment, concluded that the applicable standard was unsettled under Nevada state law, and certified the question to the Nevada Supreme Court.[4]

---

[3] "[T]he [Nevada State] Legislature has long relied on the federal minimum wage law to lay a foundation of worker protections that [Nevada] could build upon." *Doe Dancer I v. La Fuente, Inc*., 481 P.3d 860, 866 (Nev. 2021) (quoting *Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955 (Nev. 2014)). In the context of the Nevada's Minimum Wage Amendment, federal FLSA law carries even greater persuasive weight, given that the relevant language of the MWA so closely mirrors the FLSA. *Id.* at 866-67.

[4] The Ninth Circuit also grants 23(f) review for "novel legal questions that are important to class action law and likely to evade effective review after the completion of the case." *Chamberlan*, 402 F.3d at 959 (citation omitted). Whether it is proper for a district court to deny class certification on commonality grounds, while simultaneously certifying a question of state law identified by plaintiffs as a common question for the class to a state supreme court presents a novel question of class action law.

13

Plaintiff further argued that the "engaged to wait" standard would yield one answer for the class as a whole. ECF 265 at 31-34. The putative class members have substantially the same job duties and are subject to the same expectation that they be on-call 24 hours a day, seven days a week, operating under similar conditions "on the range" which severely restricted what they could do when not actively engaged with the sheep. *Id.* They also had identical contractual agreements incorporating the on-call 24/7 requirement. *Id.* Regardless of the final determination as to whether class members were engaged to wait, the question is common to the class, yet never considered by the district court.

It is even more puzzling that the district court did not address this issue because it based its finding of no commonality on the fact that class members worked in different parts of Nevada and thus, the district court presumed they worked different numbers of hours. Order at 15-16. However, if all class members were engaged to wait, required to remain in remote areas on-call, then there would be no need to determine how many hours each was actively engaged with the sheep—the question the district court chose to address.

Finally, even if the "engaged to wait" question were resolved against the proposed class, common questions remain regarding the number of hours putative class members were actively engaged in their herding duties. ECF 265 at 34-36. WRA and its member ranches did not track hours worked, *supra* at 6. Thus, the

14

putative class may rely on evidence sufficient to show the amount of their work "as a matter of just and reasonable inference," and employers may not complain about the lack of precision. *Anderson v. Mt. Clemens Pottery Co*, 328 U.S. 680, 687-88 (1946); *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 939, n.16 (9th Cir. 2019). Employees are permitted to estimate hours worked via representative proof from a sample, such as a survey or statistical study. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) ("In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability.") (quoting Manual of Complex Litigation § 11.493, p. 102 (4th ed. 2004)); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (back wages may be awarded based on representative testimony).

Here, too, the district court did not address Plaintiff's arguments regarding establishing hours of active labor using representative evidence or a formal survey. ECF 265 at 34-36. While the district court did note a declaration submitted by Defendant from a current herder reported active duties could be completed in 35 hours per week (Order at 16), WRA has generally claimed 40 hours per week in its job postings, or pointed to a 48 hour/week estimate used by DOL. ECF 273 at 22, nn.28-29. Overall, the declarations WRA submitted showed an average of over 49 hours/week. ECF 273 at 9-10. Any of those estimates of weekly hours worked would *still* yield violations of Nevada's minimum wage. *See* ECF 273 at 22-23.

15

Since the Supreme Court permits the use of survey or similar methods to establish

hours worked, even when the estimates of hours worked vary, with the maximum

estimate 1.67 to six times the lowest estimate, it was error for the district court not

to consider such methods would support finding commonality here. *See*

*Bouaphakeo,* 577 U.S. at 450, 456 (the variance in daily time estimates was

"upwards of ten minutes" on averages of 18 minutes for one department, 21.25

minutes for another; for a 20 minute estimate, a 10 minute variance would mean a

range of 15 to 25 minutes – in which the high estimate is 1.67 times the low end

estimate); *Mt. Clemens*, 328 U.S. at 691 (the range of time from representative

testimony was 2 minutes to 12 minutes per day, so the upper estimate was 6 times

the low-end estimate); *Nguyen*, 932 F.3d at 817 ("[u]ncertainty regarding class

members' damages does not prevent certification of a class as long as a valid

method has been proposed for calculating those damages") (citation omitted).

Once again the district court committed manifest error by ignoring a

common question and failing to apply controlling authority in evaluating this

common question.

4. <u>Differences in Damages Do Not Defeat Predominance, Let Alone Commonality</u>

The district court also committed manifest legal error when it denied class

certification on the grounds that commonality was not satisfied due to possible

differences in hours worked. Order at 15. As explained *supra* at 15-16, even

16

assuming the lowest estimate of hours worked offered by Defendant, liability is still established.  Any purported differences in hours worked are purely a question of damages.

The district court erred by determining that individualized damages defeated commonality (as well as typicality, see Section I.B, *infra*), as such an inquiry properly falls under the predominance prong, not the commonality prong. *Andersen v. Briad Rest. Grp., LLC*, 333 F.R.D. 194, 203 (D. Nev. 2019).  Yet, even when properly analyzed under the predominance prong, it is well-established in the Ninth Circuit that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)," *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140–41 (9th Cir. 2016) ("In wage-and-hour disputes, such individualized damages inquiries are common, and typically do not defeat certification.").

The district court ignored Plaintiff's authority that individual damages do not defeat certification.  ECF 265 at 37.  The Ninth Circuit has reversed a denial of class certification that was based on "individual issues predominat[ing] on damages calculations," emphasizing that "damages determinations are individual in nearly all wage-and-hour class actions."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) (citing *Leyva*, 716 F.3d 510).

17

B.      The District Court Did Not Apply the Correct Legal Standard on
        Typicality

The district court also committed manifest error in its assessment of
typicality. The central premise of the district court's finding that typicality was not
satisfied is that some prospective class members "worked" very many hours, while
others "worked" fewer hours.  Order at 17.  The adoption of this premise was
improper, as the district court simultaneously certified to the Nevada Supreme
Court the question of whether the Plaintiff was "engaged to wait" and entitled to
compensation for hours when he was required to remain on the range with the
sheep—in other words, whether he was working.  But that same question applies to
the putative class.  Should the Nevada Supreme Court find that the sheepherders
were engaged to wait, then no court could find that some herders worked more
hours than others.  Thus, the district court's finding that differences in hours
worked defeated typicality was premature and manifestly erroneous.

Even if it were determined the putative class was not engaged to wait, it is
well-established that "the fact that each class member would be subject to
individualized damage awards does not defeat typicality."  *Tyus v. Wendy's of Las
Vegas, Inc.*, 407 F.Supp.3d 1088, 1099 (D. Nev. 2019).  Rather, the central inquiry
of a typicality analysis is whether the members of the class have similar injuries,
and whether the named plaintiff and class members were injured by the same
course of conduct.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

1992); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (finding typicality because a uniform policy caused each class member's injury, despite minor differences in the nature of class members' specific injuries); *Tyus*, 407 F.Supp.3d at 1097-98 (finding a uniform policy caused each class member's injury, and individualized damages did not defeat typicality); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015) ("In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice").  Here, the district court failed to follow controlling Ninth Circuit authority that typicality is not defeated by differences in degree of injury or amount of damages.

## II.     THE DENIAL OF CLASS CERTIFICATION IS A DEATH-KNELL FOR THE CLAIMS OF PUTATIVE CLASS MEMBERS

A Rule 23(f) appeal is appropriate because the denial of class certification strikes a "death knell" to the claims of the putative class of H-2A sheepherders who are largely Latino Spanish speakers living isolated nomadic existences tending sheep in the United States or have returned to their far-flung home countries.[5]  *See Chamberlan*, 402 F.3d at 959.  Particularly here, the "unknown members of the class… have no notice of the action" and no realistic ability "to

---

[5] ECF 265 at 6, 14, 16-20 (herders are recruited from Chile, Peru and Mexico; they spend most of the year out on the range in isolated areas, living in trailers without toilets or other basic conveniences).

appeal the dismissal of the class action even if the original plaintiff… carr[ies]
their action through to a final judgment." *Weingartner v. Union Oil Co. of Cal.*,
431 F.2d 26, 28 n.4 (9th Cir. 1970). The denial of certification for these foreign
sheepherders therefore cuts against the purpose of Rule 23 that drafters of the rule
"had dominantly in mind"—the "vindication of the rights of groups of people who
individually would be without effective strength to bring their opponents into court
at all." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Menocal v. GEO
Grp., Inc.,* 882 F.3d 905, 915 (10th Cir. 2018) (same).

The nature of the putative class makes its members acutely unable to access
the U.S. legal system. The legal framework authorizing H-2A sheepherders to
enter the country inevitably has "pernicious effects on their ability to access
justice, both during their time as H-2A workers and thereafter."[6] H-2A
sheepherders lack visa portability, which means they are constrained to only
working for one employer while here, in largely rural and isolated settings, "and
face significant disincentives from taking legal action" even when they leave the
country,[7] including the fear of retaliation and blacklisting by associations such as
Defendant. While workers are present in the United States, employers essentially

---

[6] Briana Beltran, *134,368 Unnamed Workers: Client-Centered Representation on
Behalf of H-2a Agricultural Guestworkers*, 42 N.Y.U. Rev. L. & Soc. Change 529,
550 (2019)
[7] *Id.*

hold the key to their legal status to work. In other words, "it is obvious that these workers are reticent to report abuses, as the balance of power tips sharply in favor of their employers, who can terminate noncompliant workers and have them deported at any time."[8]

Moreover, tending sheep is inherently nomadic, isolated work. Sheepherders camp or sleep in small trailers to stay close to their flock.[9] The physical isolation due to the remote nature of the work is exacerbated by cultural isolation, as most sheepherders are Latino immigrants who do not speak English, and who come to the United States specifically to tend sheep.[10] And, as discussed above, the work is year-round, seven days a week, 24 hours a day, which often limits sheepherders' ability to return to their home countries. *See* ECF 265 at 11-14 (on duty 24/7); 16 (on range 10-12 months/year); ECF 111 ¶¶ 46, 49, 51, 53, 82.

This physical and cultural isolation, and lack of resources inherent in a workforce paid so little, makes it all but impossible for members of the proposed class to effectively vindicate their rights in the face of this denial of class certification. The denial therefore strikes a "death knell" for their claims and an

---

[8] Federica Dell'Orto, Judith L. Wood, *Agricultural Migrant Workers in Today's America: A Parallel to Modern Slavery*, Fed. Law., Sept./Oct. 2020, at 34, 37.
[9] *See* ECF 265 at 16-20; Dan Frosch, *In Loneliness, Immigrants Tend the Flock*, N.Y. Times (Feb. 22, 2009).
[10] *Id. See also* ECF 265 at 6; Dan Frosch, *Sheepherders Are Set to Get a Raise*, Wall St. J. (Oct. 13, 2015), https://www.wsj.com/articles/sheepherders-are-set-to-get-a-raise-1444776966.

immediate appeal should be allowed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant

permission to appeal the denial of class certification.

Respectfully submitted,

Dated  October 11, 2022                   By:  */s/ Christine E. Webber*
                                               Christine E. Webber
                                               cwebber@cohenmilstein.com
                                               Cohen Milstein Sellers & Toll PLLC
                                               1100 New York Ave. NW ● Fifth
                                               Floor
                                               Washington, DC 20005
                                               (202) 408-4600

                                               Alexander Hood
                                               alex@towardsjustice.org
                                               TOWARDS JUSTICE
                                               Box 371680, PMB 44465
                                               Denver, CO 80237-5680
                                               (720) 239-2606

                                               Mark R. Thierman
                                               mark@thiermanbuck.com
                                               Joshua D. Buck
                                               josh@thiermanbuck.com
                                               Leah L. Jones
                                               leah@thiermanbuck.com
                                               THIERMAN BUCK LLP
                                               7287 Lakeside Drive
                                               Reno, Nevada 89511
                                               Telephone: (775) 284-1500

                                               Attorneys for Plaintiff-Petitioner

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FRAP 5(c) and Ninth Circuit Rule 5-2 because it contains 5191 words according to Microsoft Word Office 365.

The brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it uses a proportionally spaced typeface in 14-point Times New Roman font.

Dated:  October 11, 2022                    */s/ Christine E. Webber*
                                        Christine E. Webber

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically transmitted the

Appellant's Brief to the Clerk's Office and served it on opposing counsel by email

and by first-class mail:

ELLEN JEAN WINOGRAD, ESQ,
JOSE TAFOYA, ESQ,
WOODBURN AND WEDGE
6100 Neil Road, Suite 500
Reno, Nevada 89511
Tel: 775-688-3000
Fax: 775-688-3088
ewinograd@woodburnandwedcie.com
itafoya@woodburnandwedfle.com

ANTHONY HALL, ESQ.
SIMONS HALL JOHNSTON, P.C.
690 Sierra Rose Drive
Reno, NV 89511
Tel: (775) 785-0088
ahall@shinevada.com

*/s/ Christine E. Webber*
Christine E. Webber

# ORDER BELOW

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ABEL CANTARO CASTILLO, )
                          )
        Plaintiff, )
                          )
     vs. )           3:16-cv-00237-RCJ-CLB
                          )
WESTERN RANGE ASSOCIATION, )     **ORDER**
                          )
        Defendant. )
                          )
_____)

       Plaintiff Abel Cantaro Castillo ("Plaintiff") raises five causes of action against Defendant Western Range Association ("Defendant"): (1) failure to pay minimum wages in violation of the Nevada Constitution, (2) breach of contract or quasi contract, (3) promissory estoppel, (4) unjust enrichment and quantum meruit, and (5) failure to pay separated employees' wages when due. (ECF No. 111.)[1] Plaintiff was a nonimmigrant agricultural worker, who worked as a sheepherder. The basis of Plaintiff's causes of action is his contentions that Defendant was his joint employer and did not pay him the minimum hourly wage required by Nevada law. Plaintiff seeks to bring these claims on behalf of himself as well as those similarly situated pursuant to Fed. R. Civ. P. 23.

---

[1] While the operative complaint included additional parties and claims, these were resolved with a stipulation for dismissal. (ECF No. 196.) Plaintiff's five claims against Defendant constitute all the remaining disputes to be resolved in this case.

Currently before this Court are three motions ripe for consideration: (1) Plaintiff's Motion for Partial Summary Judgment (ECF No. 303), (2) Defendant's Motion for Summary Judgment (ECF No. 300), and (3) Plaintiff's Motion to Certify Class (ECF No. 264). Having considered the motions, the Court grants Plaintiff's partial motion for summary judgment because Defendant is clearly a joint employer for H-2A purposes. Further, the Court does not rule on Defendant's motion for summary judgment. Rather, the Court believes that it cannot rule on the motion because an ambiguity exists in Nevada law. For that reason, the Court certifies a question to the Nevada Supreme Court. Finally, the Court denies Plaintiff's motion to certify a class.

## I.    FACTUAL BACKGROUND

Plaintiff, a citizen of Peru, worked as an H-2A sheepherder from "around October 2007" to June 8, 2014.[2] The H-2A temporary agricultural worker program permits individuals to work in the United States on temporary nonimmigrant agricultural worker visas. Department of Labor ("DOL") regulations set minimum wages and working conditions for H-2A workers. 20 C.F.R. § 655.0(a). Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the DOL. *Id.* § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," that complies with applicable federal regulations. *Id.* § 655.121(a)(1). These regulations establish the minimum benefits, wages, and working conditions that the employer must offer to the employee in order to avoid adversely affecting similarly-situated United States workers. *Id.* §§ 655.120(a)(2), 655.122, 655.135, and 655.210.

Defendant is a membership association that recruits and employs foreign shepherds to work at individual member ranches. Defendant runs recruitment operations in Mexico, Chile, and Peru. (ECF No. 303-6 at 63-64.) These recruitment operations are run by "coordinators"—independent

---

[2] It is unclear when Plaintiff started working and when he stopped. (ECF No. 111 ¶ 47.)

contractors who are paid and instructed in their duties by Defendant. (*Id.* at 62-63.) Coordinators' recruiting duties include interviewing potential herders and checking their references. (*Id.* at 63.) Subsequently, they guide potential herders through the visa process, helping them to obtain passports, comply with H-2A paperwork requirements, prepare for their visa interviews, obtain the required medical examination paperwork, and arrange herders' travel. (*Id.*)

Through these recruitment operations Defendant helped to secure employment for Plaintiff with El Tejon Sheep Company ("El Tejon") as a sheepherder with an H-2A visa. (ECF No. 111 ¶ 35.) During this work, Plaintiff split his time between California and Nevada under a document that both Defendant and Plaintiff signed titled, "Pre-Employment Notice of Rights and Obligations." (ECF No. 303-4.) Defendant drafted this document for Plaintiff to set out the terms of employment. (*Id.*) For example, the document established the base wage of $750, who would supply the tools for employment, when Plaintiff would receive pay, who would transport Plaintiff, and who would provide housing. (*Id.*) This document also put Plaintiff on notice that sheepherders were on call for 24 hours a day, seven days a week to ensure that the sheep received proper attention. (*Id.*) Plaintiff claims to have worked under this agreement from about October to mid-April (approximately seven months out of the year) in California, and from mid-April to September or early October (approximately five months of the year) in Nevada. (ECF No. 111 ¶ 47.)

During this time, Plaintiff worked as a sheepherder for El Tejon and allegedly tended to the sheep for 24 hours a day. (ECF No. 111 ¶ 51.) However, Defendant only compensated Plaintiff for a fraction of those hours allegedly worked and allegedly paid Plaintiff the wrong wage. (ECF No. 111 ¶ 52.) Under the H-2A program, an employer must pay the larger wage of either the state's minimum wage or the adverse effect wage rate ("AEWR") established under the program. 20 C.F.R. § 655.120. Defendant paid Plaintiff the California AEWR rather than the Nevada minimum wage.

Plaintiff brought an action in this Court to recover the wages for 24 hours of everyday that he worked as a sheepherder because Defendant is allegedly a joint employer with El Tejon under the H-2A agreements. (ECF No. 1.) Plaintiff brought the action on behalf of himself, and those similarly situated to certify the action as a class action. (*Id*.) Plaintiff brought this action against Defendant, associations like Defendant, and ranches that employed Plaintiff. (*Id*.) This Court dismissed the ranches and other associations from this action and only Defendant remains.

Plaintiff alleges that Defendant failed to pay minimum wages in violation of the Nevada Constitution. (ECF No. 111 ¶ 191.) Plaintiff argues that he is entitled to 24 hours worth of pay for everyday he worked as a sheepherder because he needed to tend to the sheep for 24 hours a day to keep the sheep safe. (ECF No. 111 ¶ 51.) The 24 hours that Plaintiff spent on the range included time eating, resting, sleeping, and other time for his personal benefit. (*Id*.) Even though Plaintiff spent time during the 24 hours for his personal benefit, he was required to look after the sheep because they were constantly at risk of being harmed. Accordingly, Plaintiff maintains that he is entitled to the Nevada minimum wage for all 24 hours of everyday that he worked for El Tejon as a sheepherder. (ECF No. 111 ¶ 191.)

Defendant argues that it is not a joint employer under the H-2A program, and even if it was, Plaintiff received the proper amount of compensation because Plaintiff is not entitled to compensation for hours spent outside of tending to the sheep. (ECF No. 300.) Defendant states that it is not a proper party for this action because it is not a joint employer under the H-2A program. (ECF No. 311.) Withstanding this argument, Defendant argues that it paid Plaintiff the proper wage under the H-2A program and that the wage Defendant paid is higher than the Nevada minimum wage, so Defendant did not underpay Plaintiff. (ECF No. 300.) Defendant argues further

that, even if it paid the wrong wage, Plaintiff is not entitled to compensation for the hours that he spent for his personal benefit. (*Id.*)

## II.    ANALYSIS

### A.  Summary Judgment Standard of Review

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). On the contrary, if the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**B. Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on the issue of Defendant's status as a joint employer under the H-2A program. Plaintiff argues every reasonable juror would find that Defendant was a joint employer from the evidence Plaintiff presents. This Court agrees.

Plaintiff identifies past cases where this Court and courts in this Circuit recognized that Defendant is a joint employer under the H-2A program. *Little v. Solis*, 297 F.R.D. 474, 478 (D. Nev. 2014); *Ruiz v. Fernandez*, No. CV–11–3088–RMP, 2013 WL 2467722, at *2 (E.D.Wash. June 7, 2013). In those cases, the courts turned to the economic realities test to determine whether Defendant is a joint employer under the H-2A program. *Id.* The courts analyzed Defendant's role

in the H-2A program and determined that Defendant is a joint employer. *Id*. Conveniently, Defendant does not address those cases and, instead, tries to relitigate its joint employer status under the economic realities test. Beyond relitigating, Defendant also wants to reverse its position that it took in *Little*. Defendant argued previously that it was a "joint employer solely for H-2A program purposes," but that its status did not preclude it from recovery in that case. *Little*, 297 F.R.D. at 478. In *Little*, the court applied "the four factors[3] used in *Bonnette* to analyze whether or not [Defendant] was a" joint employer as an H-2A employer under the FSLA. *Id*. at 479; *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983). Ultimately, the court applied the factors and found that Defendant "is indeed a joint employer of the H–2A sheepherders." *Id*. at 481. Defendant wants it both ways and this Court refuses to spill any further ink on the issue of whether Defendant is a joint employer under the H-2A program. It is quite clear from Plaintiff's motion and prior case law that there is no genuine issue of material fact as to whether Defendant is a joint employer. Therefore, the Court grants Plaintiff's motion for partial summary judgment.

## C. Defendant's Motion for Summary Judgment

Defendant argues it is entitled to summary judgment on all the claims against it because Plaintiff lacks sufficient evidence for a reasonable juror to conclude that Plaintiff worked more hours for which Defendant compensated him. As explained in depth below, the Court cannot rule on Defendant's motion for summary judgment because there is a question as to whether, under Nevada law, Plaintiff can receive compensation for time spent sleeping and for personal benefit. If Nevada law does not compensate Plaintiff for all the hours that he spent on the range as a sheepherder and, instead, only compensates him for time spent tending to the sheep, then Defendant's motion for summary judgment is proper. However, Defendant's motion is improper

---

[3] "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470.

if Nevada law does compensate Plaintiff for all the hours he spent on the range as a sheepherder because Plaintiff may have been underpaid for his work. The Court will certify a question to the Nevada Supreme Court to resolve this issue and defer on Defendant's summary judgment motion.

Plaintiff argues that he is entitled to 24 hours of pay for every day that he was a sheepherder because, he contends, he was always working to some degree. He admits much of the time that he spent as a sheepherder he could eat, sleep, and do other things for his personal benefit. Nonetheless, he maintains he worked 24 hours a day to stay close to the sheep and watch for predators as well as otherwise tend to the sheep. Accordingly, Plaintiff claims that he was underpaid because he did not receive 24 hours' worth of pay for every day spent on the ranch. Assuming this is true, the Court must determine what minimum wage scheme Plaintiff's claim falls under for the 24 hours of work and whether that minimum wage scheme pays Plaintiff minimum wage for all 24 hours of work. Plaintiff can survive a summary judgment motion if a reasonable juror can find that Defendant was required to pay Plaintiff for all 24 hours of work under the applicable minimum wage scheme.

H-2A employers must "pay a wage that is the highest of the AEWR, the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, **or the Federal or State minimum wage**, except where a special procedure is approved for an occupation or specific class of agricultural employment." 20 C.F.R. § 655.120 (emphasis added). Plaintiff brings this action under the Nevada Minimum Wage Amendment, so the state minimum wage for the H-2A pay consideration is Nevada's minimum wage. Weighing the applicable wages and other possible compensation methods under 20 C.F.R. § 655.120, Nevada's minimum wage would pay Plaintiff the most.[4] Because the Nevada minimum wage is the highest, the Court must look at whether

---

[4] Defendant alleges that Plaintiff failed to allege facts that he was underpaid because Plaintiff admitted that he was paid the California rate, which is higher than the Nevada rate. (ECF No. 300 at 11.) This argument fails to recognize that Plaintiff should receive more money under the Nevada

Nevada law requires Defendant to pay Plaintiff for all 24 hours of each day spent tending to the sheep, eating, sleeping, and other time spent for personal benefit.

### i. Nevada Law

Nevada law does not answer the question of whether Plaintiff is entitled to minimum wage for all the hours spent on the range. The Constitution of the State of Nevada Article 15 Section 16 provides, in part, that an "employer shall pay a wage to each employee of not less than the hourly rates set forth in this section." While this provision establishes that workers shall receive a minimum wage for work completed, it does not define "work" to determine what does and does not qualify as work that receives the minimum wage. *See id*. The Nevada Revised Statutes (NRS) also establishes a minimum wage providing that an "employer shall pay to the employee wages for each hour the employee works." NRS 608.016. Again, the statute establishing a minimum wage does not provide a definition of "work" to determine whether Plaintiff should receive compensation for all 24 hours of a day spent on the range. *See id*. Moreover, the regulation that implements NRS 608.016 states that "[a]n employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." NAC 608.115. This regulation does nothing more to clear up what "work" is under Nevada law. *See Rite of Passage, ATCS/Silver State Acad. v. State, Dep't of Bus. & Indus., Off. of Lab. Com'r*, 131 Nev. 1338 (2015) ("Nevada law provides little guidance" on what conduct qualifies as work to receive the minimum wage).

Further, within the same chapter of the NRS that establishes a minimum wage there are provisions that may support a finding for either the Plaintiff or Defendant. The NRS defines

---

rate for all 24 hours of a day rather than the California rate for only the hours that Plaintiff tended to the sheep. Therefore, Plaintiff did plead facts that show he was underpaid if Nevada law considers all 24 hours of a day of Plaintiff's time on the range as "work" for the purposes of receiving minimum wage.

"workday" as "a period of 24 consecutive hours which begins when the employee begins work." NRS 608.0126. Textually speaking, this provision creates a 24-hour workday, allowing an employee to receive compensation for 24 hours of work, which supports the position that Plaintiff could work and receive compensation for all 24 hours of every day that Plaintiff spent as a sheepherder. But, this provision also states that the workday starts once the employee starts working for the day. *Id*. Logically, if there is a start to the workday then there must also be an end to the workday, which supports Defendant's position that Plaintiff could not have worked 24 hours a day because he stopped working at some point and did not start again until he was tending to the sheep. Neither of these points are especially persuasive, so we must look to other provisions in the statute that may answer the question of whether Plaintiff can receive compensation for all 24 hours even though his time was split between tending to the sheep and for his personal benefit.

Withstanding the definition of workday, the NRS differentiates time spent working from time spent eating, resting, and sleeping. Pursuant to NRS 608.019, an employer must provide an employee with a 30-minute uninterrupted meal period for every continuous 8-hour period of work. In the very next provision, the statute requires employers to give their employees an uninterrupted 10-minute break for every 4 hours of work. *Id*. This provision provides, in part, that authorized break periods "shall be counted as hours worked, for which there shall be no deduction from wages." *Id*. Comparing the two provisions, it is clear that the drafters intended to allow employees to receive compensation for time spent resting, but not for time spent eating. Accordingly, it is safe to assume that Nevada law does not consider time spent eating as work that employees can receive compensation for, but Nevada law does consider time spent resting as work. However, it is difficult to apply these provisions to this matter because Plaintiff asserts that even when he was eating and resting, he was still expected to tend to the sheep. Therefore, taking all the facts that Plaintiff alleged as true, Plaintiff never received a true "meal period" under the statute because it was not

uninterrupted. For that reason, these provisions cut against Defendant's argument that Plaintiff was not working 24 hours a day.

Additionally, the NRS allows certain employers to withhold pay from employees while they are sleeping at the job site, but the exemption is only offered to types of employers that are not related to Defendant. Under Nevada law, employees of a residential facility who administer care or supervision and employees of an agency who provide in home care cannot receive pay for time spent sleeping while at the residential facility or home. NRS 608.0195. The provision exempts certain types of work from the prohibition on receiving pay while sleeping, but neither of those groups are similar to the type of work at issue here.[5] Although this provision does not specifically answer the question of whether Plaintiff can claim that he should be compensated for time spent sleeping because he was working, it does show that the Nevada Legislature intended to exempt only two groups from receiving compensation while sleeping.[6] Reading the text plainly, the Nevada Legislature addressed sleeping while on the job for only a subset of employers. Without more in the text, we cannot assume that the Nevada Legislature intended to allow Defendant to withhold pay for sleeping, nor can we assume that Plaintiff is entitled to pay while he slept. Regardless of the assumptions that can made using the provisions in the Constitution of the State of Nevada and the NRS, there are no Nevada laws that directly address the question of whether Plaintiff's 24 hours spent as a sheepherder were "work" for the purposes of receiving minimum wage.[7]

---

[5] The prohibition does not apply to: a firefighter, a member of a rescue or emergency services crew or a peace officer, including, without limitation, a correctional officer. NRS 608.0195.

[6] *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. At 1338 n.2 (The Nevada Legislature passed this exemption in 2015 to allow for agreements that do not compensate employees for sleep time on the employer's property).

[7] Even the Nevada Labor Commissioner recognizes that Nevada laws do not define "work." *Id*. ("The Labor Commissioner maintains that the statutory scheme entrusts the determination of whether an employee "works" within the meaning of NRS 608.016 to his office to decide on a case-by-case basis.").

ii.   **Nevada Supreme Court**

        Without a proper understanding of what "work" is defined as under Nevada law, the Court must turn to the Nevada Supreme Court to determine whether the legal precedent of the state's highest court can help the court define "work." The Nevada Supreme Court addressed a similar issue in 2015 when it heard a challenge to the Nevada Labor Commissioner's decision that a Coach Counselor should receive compensation for an 8-hour sleeping period. *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338. In that case, the Nevada Supreme Court found that "the determination of whether a certain block of time is hours worked is . . . properly characterized as a mixed question of law and fact." *Id*. at *2. Because the decision of what is work relies on the factual circumstances of each individual case, the holding in *Rite of Passage* is inapplicable here. The plaintiff in *Rite of Passage* agreed in her employment contract to take an unpaid sleeping period. Id. at *1. Here, Plaintiff and Defendant's employment agreement was silent on payment for time spent sleeping. Further, the "work" time at issue here goes beyond time spent sleeping and expands to every 24-hour period that Plaintiff worked for Defendant. In sum, the Nevada Supreme Court looked at just the time spent sleeping and did not look at all other time spent for personal benefit. Factually speaking, these cases are not similar.

        Unfortunately, *Rite of Passage* does nothing to help this court understand what is and what is not "work" because the Nevada Supreme Court answered the question of whether the agency made a correct determination given the findings. The Nevada Supreme Court did not and has not answered the question of what constitutes "work" for the purpose of receiving minimum wage under Nevada's minimum wage law. NRS 608.016.

iii.  **Certification to the Nevada Supreme Court**

        The lack of precedent and the unanswered question of law drives this court to certify the question of whether the Nevada minimum law compensates Plaintiff for all the time spent as a

sheepherder. Pursuant to Nevada Rule of Appellate Procedure 5, the Nevada Supreme Court may answer questions of law certified to it by a United States District Court upon the certifying court's request:

> if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

Nev. R. App. P. 5(a); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 122 Nev. 746, 137 (2006) (allowing the certification of questions for the Nevada Supreme Court where a question of law is at issue). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (court denied certification); *citing Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974). Federal courts can predict how a state's highest court would rule on a question that the state's highest court has not yet decided. *Id*. However, federal courts can certify a question to a state's highest court where certification may "save time, energy, and resources and help [ ] build a cooperative judicial federalism." *Lehman Bros*., 416 U.S. at 391. "Factors a federal court should consider in exercising this discretion include whether the state law question presents a significant question of important state public policy, whether the issue involved has broad application, whether law from other states is instructive, the state court's case load, and comity and federalism concerns." *Carolina Cas. Ins. Co*., 572 F. Supp. 2d at 1225; *citing Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003).

The question at the heart of Defendant's summary judgment motion, whether all Plaintiff's time spent as a sheepherder was work, is a question of law for which the Nevada Supreme Court has no controlling precedent.[8] Further, the certified question takes on a significant question of

---

[8] As mentioned previously, the Nevada Supreme Court only answered the question of whether time spent sleeping is work and not whether time spent for personal benefit is work. *Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338. Rite of Passage is inapplicable.

important state public policy. Wage disputes hang on the question of what "work" is to determine whether an employee was underpaid. *See Rite of Passage, ATCS/Silver State Acad*, 131 Nev. at 1338; *Sargent v. HG Staffing*, LLC, No. 313CV00453LRHGWF, 2019 WL 1117905, at *8 (D. Nev. Mar. 8, 2019) (deciding whether the plaintiffs established an FSLA claim based on whether they worked). Without an answer to this question, Nevada courts will continue to hear cases regarding the definition of "work" to determine wage disputes, so the certified question will have a broad application and will decrease the Nevada Supreme Court's (and this Court's) case load. Finally, laws from other states are not instructive for this question because they either explicitly exempt this type of work from compensation or allow the worker to receive compensation.[9]

For all the reasons mentioned previously, the Court will certify the following question of law to the Nevada Supreme Court:

> Under the Constitution of the State of Nevada and Chapter 608 of the Nevada Revised Statutes, does Nevada law require Defendant Western Range Association to pay Plaintiff Abel Cantaro Castillo 24 hours of wages for every day worked because Plaintiff Castillo was not allowed to leave and was always performing some job duties even though some of the time he spent on the range was for his personal benefit?

The Court will defer on Defendant's summary judgment motion and stay all further proceedings until the Nevada Supreme Court answers the certified question.

**D. Class Certification**

Plaintiff seeks to certify a class of sheepherders that allegedly did not receive compensation for all the hours that they worked. Certifying the class and allowing Plaintiff to proceed with a class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)

---

[9] *Berrocal v. Fernandez*, 155 Wash. 2d 585, 588, 121 P.3d 82, 83 (2005) (excluding sheepherding from minimum wage laws in Washington); IWC Wage Order 14-2001 (allowing sheepherders to receive overtime pay to compensate for long hours in California).

(citations and quotations omitted). Plaintiff must meet the factors under Fed. R. Civ. P. 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Essentially, Plaintiff must show numerosity, commonality, typicality, and adequate representation. *See Id*. Class certification fails here because the prospective class members' claims do not share commonality or typicality.

   **i.    Commonality**

Prospective class members share commonality when they share a common question of law or fact. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "A plaintiff must demonstrate that the class members have suffered the same injury, which means that their claims must depend upon a common contention." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (citation and internal quotation marks omitted). Prospective class members do not share commonality because they did not work in similar conditions, causing them to lack a common contention.

As Defendant points out, the prospective class members worked in different areas of Nevada, causing them to endure different conditions for sheep tending, resulting in different hours worked. These differences are important in this matter because the prospective class members claim that they were not paid for all the hours spent tending to the sheep. If each prospective class member dealt with different conditions due to where they were in Nevada, then it is unlikely that they share commonality in how often they needed to care for the sheep and ultimately how much they worked. For example, one prospective class member claimed that the heat caused his sheep to sleep more often, which helped him worry less about the sheep and get better rest. Contrast that experience with Castillo's, the prospective class representative, who claims that he dealt with

conditions that caused him to stay on alert for 24 hours to ensure his sheep's safety. Another sheepherder stated that the time of year allowed him to work 35 hours a week because his sheep did not need much attention. In sum, some prospective class members allegedly got sleep, some could not sleep, some barely worked, and some needed to always work. The stark contrast in experiences makes it difficult for each prospective class member to allege that they were adversely affected by the same sheep herding conditions, which caused them to work more hours than they were paid.

Moreover, the named representative's claim differs from the prospective class members in that he claims that he should receive compensation for 24 hours of every day that he served as a sheepherder. As mentioned previously, the prospective class members claim that they faced different hardships which caused them to work only a few hours a day. The "named plaintiff's claim and the class claims are [not] so interrelated" that the claims share commonality. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.[10] Accordingly, commonality does not exist between the prospective class members.

### ii.    Typicality

The prospective class members do not share typicality. "Although the commonality and typicality requirements tend to merge into one another, they are stated differently." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted). Typicality is established when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). The difference in experience highlighted previously makes it difficult for the prospective class members to claim

---

[10] "[Typicality and commonality] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

that each claim arose from the same set of events. As mentioned previously, some prospective class members worked many hours, and some worked very few hours. Just based on these factual circumstances alone, the prospective class members' claims are not typical.

### III.    CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary, judgment is **GRANTED**. (ECF No. 303.)

IT IS FURTHER ORDERED that a question be sent to the Nevada Supreme Court to resolve Defendant's motion for summary judgment. *See* II(C)(iii). For that reason, this court will defer on Defendant's summary judgment motion and stay all further proceedings until the Nevada Supreme Court answers the certified question. (ECF No. 300.)

IT IS FURTHER ORDERED that Plaintiff's motion to certify a class is **DENIED**. (ECF No. 264)

IT IS SO ORDERED.

Dated September 23, 2022.

_____
ROBERT C. JONES
United States District Judge